# UNITED STATES *v.* FORRESTER.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE DISTRICT OF COLORADO.

No. 287. Argued October 22, 23, 26, 1908.—Decided December 14, 1908.

*United States* v. *Keitel, ante,* p. 370, followed; the rule therein stated as to fraudulent entries of coal lands under §§ 2347–2350, Rev. Stat., by qualified persons for the benefit, and as agents of, disqualified persons, applies not only to cash entries, but also to entries under preferential rights by persons opening and developing mines on the lands entered.

The preferential right under §§ 2348, 2349, Rev. Stat., is not in and of itself the equivalent of an entry uncontrolled by the prohibitions expressed in the statutes relating to entries of coal lands, but is simply

a privilege to make the statutory entry of a particular tract in pref-erence to others.

157 Fed. Rep. 396, reversed.

THE facts are stated in the opinion.

*The Attorney General* and *The Solicitor General*, with whom *Mr. Edwin W. Lawrence*, Special Assistant to the Attorney General, was on the brief, for the United States.[1]

*Mr. John M. Waldron*, with whom *Mr. G. Q. Richmond* was on the brief, for defendants in error.

MR. JUSTICE WHITE delivered the opinion of the court.

A demurrer having been sustained to an indictment found against the present defendants in error, this writ of error was prosecuted on behalf of the United States under the authority of the act of March 2, 1907 (34 Stat. 1246).

The five persons named as defendants were accused of hav-ing at Durango, Colorado, entered into an unlawful conspiracy to defraud the United States of more than thirty-five hundred acres of coal lands, eighteen tracts of which land were partic-ularly described. The purpose and object of the conspiracy was averred to have been the obtaining of the title to the lands for a Colorado corporation, styled the Calumet Fuel Com-pany, in a quantity far greater than the corporation could lawfully acquire. The lands were averred to be "all then and there lands of the United States, chiefly valuable for the deposit of coal therein, situated within said land district, and open to entry and purchase as coal lands at the said land office, under the laws of the United States relating to the entry and sale of coal lands, and the rules and regulations then in force, which had theretofore been made under authority of said laws by the Commissioner of the General Land Office with the ap-proval of the Secretary of the Interior." The means by which

---

[1] For abstract of argument see *United States* v. *Keitel, ante,* p. 372.

the lands were to be fraudulently acquired were substantially as follows: Persons qualified to enter coal lands were to be procured, who would be furnished by the conspirators or the corporation with the means to purchase such lands upon antecedent agreements that the lands when acquired should be conveyed as directed by the conspirators, each entryman to make the application to purchase and the final entry, and in so doing to make affidavit, in which among other things it would be falsely stated that the entryman was making the entry for his own use and benefit, and not directly or indirectly for the use or benefit of any other person, whereby the local land officers would be deceived, etc. Forty-nine separate overt acts were charged to have been done in furtherance of the conspiracy. In six of the paragraphs relating to the commission of overt acts the making of affidavits at purchase concerning six of the eighteen tracts enumerated in the body of the indictment was alleged, and the affidavits were set forth verbatim. In each affidavit, besides asserting citizenship, no previous exercise of a right to purchase, and stating the character of the lands, the applicant declared that he had expended a small sum (in one instance fifty dollars, in the others fifteen or twenty dollars) in developing a mine on the particular tract, that the applicant was in actual possession of the mine, and that the entry was made for his own use and benefit and not indirectly for the use or benefit of any other party. The remaining overt acts concerned the borrowing of the money to make the purchases, the furnishing of the money to the entrymen to make the payments, the execution of deeds by the entrymen, the surveying of certain of the lands, an affidavit as to the distance of some of the lands from a completed railroad, etc.

Among other grounds of demurrer to the indictment was one asserting that no offense was stated therein. The demurrer was sustained "for reasons given on consideration of the first count in case No. 2022, *United States of America* v. *F. W. Keitel et al.*" The decision thus made the basis of the

ruling was that reviewed in case No. 286, which we have just decided, *ante*, p. 370. As pointed out in the opinion in that case, the court below, in quashing the indictment there considered, treated it as relating solely to cash entries made under the provisions of § 2347, Rev. Stat. If the indictment in this case is also to be so treated, it clearly follows from the ruling which we have made in the previous case that the court erred in sustaining the demurrer. But it is insisted on behalf of the defendants in error that this case differs from the *Keitel case*, because the conspiracy here charged did not concern cash entries so called, but embraced only entries of coal lands made by persons who had secured by the opening and developing of mines and the filing of declaratory statements as provided in § 2349 preferential rights of entry. If it be certain that the court below had construed the indictment as solely relating to strictly cash entries, then, under the views expressed in the *Keitel case*, the contention now made as to the true significance of the indictment would not be open upon this record. It does not, however, follow that the court below interpreted the indictment here as relating solely to cash entries, because it referred to the reasons given for quashing the first count of the indictment in the *Keitel case* as affording the basis for its action in sustaining the demurrer to the indictment in this. We say this because it may well be that the court deemed that the construction which it gave to the statutes as applied in the *Keitel case* to cash entries was applicable, even although the indictment in the case was concerned with preferential entries. In any event, in applying the ruling which it made in the *Keitel case* to this, the court below must have construed the conspiracy charged in the indictment as relating to all or any of the following classes: 1, to the procuring of the making of original cash entries by qualified entrymen in their own names while secretly acting as agents for a disqualified person; 2, to the procuring of qualified persons to take possession and improve coal-lands and to file declaratory statements, with the ultimate object and purpose of entering the lands for the

benefit of disqualified persons; and, 3, to cause persons in whose favor preference rights to enter coal lands had arisen to exercise such rights by purchasing the land ostensibly for themselves but in reality for the benefit of disqualified persons, and to pay for the same with money furnished by those persons under an obligation to convey the land to them.

The first two of these classes are so obviously controlled by the construction of the statute which we have just announced in the *Keitel case* as to demonstrate beyond contention that the court below erred in its ruling on the demurrer. The third class is, we think, also necessarily governed by the construction which we have given the statute in the *Keitel case*. It being settled in that case that the prohibition against more than one entry of coal lands by the same person prohibits a qualified person from entering such lands apparently for himself, but in fact as the agent of a disqualified person, it follows that the prohibition embraces an entry made by one through the procurement and for the benefit of another, although the entryman had previously initiated a preference right to enter the land for his own account. The mere preference right obtained as the result of taking the steps enumerated in §§ 2348, 2349, Rev. Stat., including the filing of the declaratory statement, is, as described in § 2348, simply "a preference right of entry, under the preceding section, of the mine so opened and improved." Turning to § 2347, the preceding section referred to, it will be seen that the entry therein provided for is the cash entry made by applying to purchase the land, and cotemporaneously therewith making payment for the same, which entry, as we have decided in the *Keitel case,* excludes the right of a qualified person to make the entry in his own name with the money and for the benefit of a disqualified person. When it is considered that the preference which the statute allows is but a right within the time limited in the statute to make the entry authorized by § 2347, it cannot be held, without destroying that section, that the obtaining of such mere right of preference authorized the making, not only of an

entry which the statute permitted, but as well one which the statute forbade. All the argument which seeks to demonstrate that the provision which gives the right to be preferred in making an authorized entry, endows with the authority to make an illegal because prohibited entry, rests upon a mere misconception of the nature and character of the right of preference for which the statute provides. The argument assumes that the right of preference is in and of itself the equivalent of an entry, not controlled by the prohibition which the statute expresses, when in truth and in fact the right of preference is merely a privilege given to make the statutory entry of a particular tract of coal land in preference to others. And the misconceptions upon which the argument rests concerning the nature and character of the preference right for which the coal land statutes provide when duly appreciated at once demonstrates the irrelevancy of previous rulings of this court concerning the right of an entryman after entry or after the doing of acts made by the statute equivalent to an entry to dispose of the land embraced within the entry.

It follows from the construction which we have given the statutes in the opinion delivered in the *Keitel case*, No. 286, just decided, and for the reasons here stated, that the court below erred in sustaining the demurrer to the indictment.

*Reversed and remanded for further proceedings in conformity to this opinion.*